KAREN NYHLEN
10540 Lakeside Dr N Unit C
Garden Grove, CA 92840-5059
Phone Number (310) 601-0446
Email: karen.nyhlen@gmail.com

IN PRO PER

FILED
CLERK, U.S. DISTRICT COURT

APR 1 0 2026

CENTRAL DISTRICT OF CALIFORNIA
BY ᴗDVE                   DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION (SANTA ANA)

| | |
|---|---|
| Karen Nyhlen, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>Boundless Digital LLC, a California limited liability company;<br><br>Blue Ribbon Take LLC, a California limited liability company;<br><br>Frank Huerta, an individual; and<br><br>DOES 1 – 20, inclusive,<br><br>Defendant(s). | Case No.: 8:26-cv-00873-JVS-(JDEx)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF TEMPORARY RESTRAINING ORDER ("TRO")** |

## I. INTRODUCTION

1.      This case arises from Defendants' misuse of Plaintiff's intellectual property, trade secrets, and identity after obtaining access through a written collaboration agreement (the "Agreement"). Plaintiff created and owns an original television series and related materials developed over several years. The individual Defendant is the Sole Member and Sole Manager of

the California limited liability company Defendants.

2.    <u>Exhibit 1A</u> (Summary of Key Agreement Terms) is a summary of the key terms of the Agreement establishing Plaintiff's ownership, Defendants' lack of authorship, and limited scope of authorization granted Defendants.

3.    Plaintiff entered into the Agreement based on Defendants' representations, including the Operator Carve-Out drafted by Defendants, that Defendants' role was limited to commercializing and producing the television series under Plaintiff's control. (<u>Ex. 2</u>).

4.    <u>Exhibit 3</u> contains representative excerpts of Plaintiff's registered and original works, including the Pilot Teleplay, Scene Outlines, audiovisual content, and copyrighted Key Art. The microdrama-format teleplays for the episodes of the television series are derivative works based on Plaintiff's previously registered Pilot Teleplay and Scene Outlines, as reflected in <u>Exhibit 3</u>.

5.    Defendants induced Plaintiff to enter into the collaboration agreement through false representations regarding their role and limitations. After gaining access to Plaintiff's scripts, teleplays, advertiser list, and proprietary commercialization strategies, Defendants exceeded the scope of authorization and refused to perform unless Plaintiff relinquished creative control.

6.    Upon termination, Defendants' rights to use Plaintiff's materials ceased. (<u>Ex. 1A</u> § 8).

7.    Defendants then launched a competing project entitled "*Almost*" incorporating Plaintiff's concepts and using Plaintiff's materials and business strategy to obtain an unjust competitive advantage at Plaintiff's expense.

8.    Defendants continue to use Plaintiff's intellectual property and confidential business information to develop a competing project and gain an unjust head start despite termination of the Agreement and repeated demands to cease.

9.    Immediate injunctive relief is necessary to prevent further irreparable harm.

## II. LIKELIHOOD OF SUCCESS ON THE MERITS

10.    Plaintiff is likely to succeed on the merits of her claims, as demonstrated by the following:

//

A.     Copyright Infringement.

11.     Plaintiff owns valid, registered copyrights in the TV Series and related works, including the Pilot Teleplay, the Scene Outlines for Season 1, and Plaintiff's Key Art, as well as additional teleplays, scene outlines, and audiovisual materials.  Plaintiff's ownership of the TV Series and all related intellectual property is expressly established in the Agreement. (Ex. 1A § 1).

12.     The microdrama-format teleplays are derivative works based on Plaintiff's previously registered Pilot Teleplay and Scene Outlines. (Ex. 3).

13.     Defendants used Plaintiff's copyrighted Key Art and prominently displayed Plaintiff's name and identity in connection with commercial promotional materials for the TV Series, creating a false association and the appearance of Plaintiff's endorsement. These materials remained publicly accessible on Defendants' websites even after Plaintiff's corrections and objections, demonstrating ongoing unauthorized use. (Exs. 6–7).

14.     Defendants had direct access to these works through the parties' Agreement and were provided scripts, outlines, and microdrama-format teleplays. Defendants' access was limited and conditional under the Agreement. (Ex. 1A §§ 3 - 5).

15.     After termination, Defendants developed and promoted a competing project entitled "*Almost,*" which incorporates substantially similar protected expression, including serialized microdrama format, character dynamics, and narrative structure.

16.     At the same time, Defendants continued to publicly display materials from Plaintiff's TV Series on their websites, including Plaintiff's name, television series and copyrighted works. (Ex. 10).

17.     Therefore, Defendants' infringement includes the unauthorized display of Plaintiff's copyrighted works on Defendants' website, as shown in Exhibit 10, which was used to promote Defendants' commercial activities.

B.     Trade Secret Misappropriation

18.     Pursuant to the Agreement and solely for authorized use in connection with the TV Series, Plaintiff disclosed confidential and proprietary business information to Defendants, including a curated Targeted Advertisers List, Sponsor Advertiser Pricing Strategy, and Sponsor

Integration Model, pursuant to contractual confidentiality obligations. (Ex. 1A §§ 5, 7).

19. Plaintiff's Trade Secrets include a Targeted Advertisers List and commercialization system developed over multiple years and thousands of contacts which Defendants obtained through direct access. (Ex. 8).

20. Defendants used and replicated Plaintiff's pricing strategy and commercialization model and retained access to these materials after termination, using them to develop and promote competing commercial activities.

21. The Agreement required Defendants to maintain the confidentiality of Plaintiff's proprietary information and restrict its use both during the term of the Agreement and after its termination or expiration. (Ex. 1A § 6).

22. Such information was provided solely for authorized use in connection with the TV Series. (Ex. 1A §§ 5, 7).

C. Breach of Contract and Fraud.

23. Defendants required inclusion of an Operator Carve-Out representing that they would not act as creative contributors to the TV Series. (Ex. 1A § 4).

24. After obtaining access to Plaintiff's proprietary materials, Defendants reversed course, asserted creative control, and refused to perform their obligations unless Plaintiff accepted Defendants' proposed "adaptation," directly contradicting the Agreement and Defendants' prior representations. (Ex. 1A §§ 3-5).

25. As shown in Exhibit 5, Defendants developed a detailed episodic structure for the TV series based on Plaintiff's story and expressly: (i) characterized their proposed changes as an "adaptation" of Plaintiff's work ("Defendants' Adaptations"); and (ii) acknowledged that they were modifying Plaintiff's original storyline for a different medium, stating that "the story was originally written for one medium… now we're on a different medium." Defendants refused to perform unless Plaintiff relinquished creative authority and agreed to Defendants' Adaptations.

26. These communications occurred after Defendants obtained access to Plaintiff's microdrama-format scripts and demonstrate Defendants' intent to create a derivative version of Plaintiff's work, despite agreeing that they would not act as creative contributors. Defendants'

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF TRO

conduct directly contradicts the Agreement's express limitations on their role and authority. (Ex. 1A §§ 3 - 5).

D.     False Endorsement.

27.     Defendants used Plaintiff's name, identity, the television series and copyrighted works in connection with Defendants' websites and promotional materials. (Exs. 6–7).

28.     Defendants also made false statements regarding Plaintiff's credentials, creating a likelihood of confusion as to Plaintiff's affiliation, sponsorship, or endorsement of Defendants' activities. (Exs. 6–7).

29.     Defendants had no authorization to use Plaintiff's name, identity, or intellectual property outside the limited scope of the Agreement. (Ex. 1A §§ 1, 5).

30.     Defendants continued to publicly display and promote Plaintiff's television series, copyrighted key art, and name on their websites after termination and notice. (Ex. 10).

31.     Plaintiff provided written notice and demanded that Defendants cease all use of her intellectual property, but Defendants refused and continued their conduct. (Ex. 11).

### III. IRREPARABLE HARM

32.     Plaintiff is suffering ongoing and irreparable harm as a direct result of Defendants' conduct.

33.     Defendants' continued conduct despite notice and termination demonstrates that the harm is ongoing and will not cease absent court intervention.

34.     Defendants are actively exploiting Plaintiff's intellectual property and creative work in connection with a competing project, while retaining and continuing to use Plaintiff's confidential business information. This conduct forces Plaintiff to compete against her own intellectual property and business strategy, resulting in loss of market position, loss of business opportunities, and disruption of Plaintiff's ability to develop and commercialize the TV Series.

35.     Defendants have also disclosed Plaintiff's proprietary materials, including casting breakdowns and scene materials, to third parties in the entertainment industry without authorization, further destroying the confidentiality of Plaintiff's information and exacerbating the ongoing harm.

36.     Defendants' unauthorized disclosure of Plaintiff's proprietary materials to third

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF TRO

parties in the entertainment industry demonstrates that Plaintiff's confidential information is no longer secure and cannot be made confidential again.

37.     Defendants were initially granted limited authorization to use Plaintiff's materials solely within the scope of the Agreement.  However, Defendants' continued use of Plaintiff's materials after termination and outside the permitted scope is unauthorized.

38.     Defendants have continued their conduct even after termination of the Agreement and repeated demands to cease. As demonstrated by Defendants' continued display of Plaintiff's materials on their website, including Plaintiff's name, identity, television series and copyrighted works, Defendants are engaging in ongoing infringement and creating a false association that harms Plaintiff's professional reputation and deprives Plaintiff of control over her intellectual property. (Ex. 10).

39.     Defendants' continued conduct directly violates the Agreement's ownership, scope, and confidentiality provisions. (Ex. 1A §§ 1, 5, 6).

40.     Defendants' misappropriation of Plaintiff's Trade Secrets, including the proprietary Targeted Advertisers List, advertiser targeting, Sponsor Advertiser Pricing Strategy, and Sponsor Integration Models, further causes irreparable harm.  The continued use or threatened use of such information destroys its secrecy and provides Defendants with an ongoing and unfair competitive advantage. Once disclosed and used, Plaintiff's Trade Secrets cannot be made secret again.

41.     In addition, Plaintiff has been forced to divert substantial time and resources away from developing and marketing the TV Series in order to address Defendants' misconduct, resulting in delay in commercialization and loss of legitimate business opportunities.

42.     Monetary damages are inadequate to compensate for these injuries. The harm is ongoing and will continue absent immediate court intervention. Immediate injunctive relief is necessary to prevent further irreparable harm.

## IV. BALANCE OF EQUITIES

43.     The balance of equities strongly favors Plaintiff.

44.     Plaintiff seeks only to prevent Defendants from continuing to use materials that belong exclusively to Plaintiff.  Defendants suffer no legitimate harm from being required to cease

unlawful conduct.

## V. PUBLIC INTEREST

45.     The public interest supports enforcement of intellectual property rights, prevention of consumer confusion, and protection against unfair business practices.

## VI. CONCLUSION

46.     The Agreement expressly provides that Plaintiff is entitled to injunctive relief to prevent unauthorized use of her intellectual property. (Ex. 1A § 9).  Plaintiff respectfully requests that the Court grant the requested Temporary Restraining Order and such other relief as the Court deems just and proper.

DATED: April 10, 2026

_____
KAREN NYHLEN
In Pro Per

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF TRO